AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>YUJING ZHANG,<br><br>*Defendant(s)* | ) ) ) ) ) ) )  Case No. 19-8100-WM |

FILED BY _____ D.C.
APR 01 2019
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __03/30/2019__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1001 | False Statements to a Federal Officer; |
| 18 U.S.C. § 1752(a)(1) | Entering or Remaining in a Restricted Building or Grounds |

This criminal complaint is based on these facts:

PLEASE SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Samuel Ivanovich, Special Agent, USSS
*Printed name and title*

Sworn to before me and signed in my presence.
(by Telephone)

Date: __03/31/2019__

City and state: __Highland Beach, FLA.__

_____
*Judge's signature*

Hon. William Matthewman, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

Your affiant, Samuel Ivanovich, first being duly sworn, does hereby depose and state as follows:

1.  I am a Special Agent of the United States Secret Service ("USSS"), and I have been so employed since March, 2017. I am presently assigned to the West Palm Beach Resident Office and have received extensive training in the investigation of counterfeit currency, identity theft, check fraud, bank fraud, and access device fraud, threating statements toward USSS protected persons, secure grounds or buildings among other things. I am an investigative or law enforcement officer of the United States, in that I am empowered by law to conduct investigations and to make arrests for felony offenses, under the authority of Title 18, United States Code Section 3056.

2.  The information in this affidavit is based on my personal knowledge and information obtained from other law enforcement personnel, and other individuals who have personal knowledge of the facts. The information set forth herein is provided solely for the purpose of establishing probable cause in support of the criminal complaint charging Yujing Zhang, (hereinafter "**ZHANG**"), with making false statements toward Federal Law Enforcement Agents of the United States, in violation of Title 18, United States Code, Section 1001 and unlawfully entering a restricted building or grounds, in violation of Title 18, United States Code, Section 1752. Because this affidavit is submitted for the limited purpose of establishing probable cause, it does not include all of the details of the investigation of which your affiant is aware.

3.  Beginning on March 28, 2019, a Protective Zone around the property known as the Mar-a-Lago Club, located at 1100 S. Ocean Blvd., Palm Beach, Palm Beach County,

Southern District of Florida, 33480, was established to secure the building and grounds in preparation for the visit of President of the United States Donald J. Trump to Mar-a-Lago. Throughout this property and the area surrounding Mar-a-Lago, various road blocks, restricted access signage, uniformed Palm Beach County Sheriff's Deputies, U.S. Secret Service Special Agents, and Uniformed Division Officers control access onto the grounds of Mar-a-Lago. In order to even approach duty U.S. Secret Service personnel for purposes of screening, an individual attempting to gain entry to Mar-a-Lago must pass a large prominently displayed white sign several feet in height, with red and black letting, which contain the following express restricted entry warning:

**UNITED STATES SECRET SERVICE RESTRICTED AREA**
**This area is under the jurisdiction of the U.S. Secret Service. You are entering A "Restricted Building or Grounds" as defined in Title 18, United States Code, Section 1752. Persons entering without lawful authority are subject to arrest and prosecution.**

Your affiant shall refer to signs displaying this warning as "restricted access warning signs" herein.

4. On March 30, 2019, at approximately 12:15 p.m., Special Agent Krystle Kerr (who was wearing attire containing U.S. Secret Service marked police identifiers), was on duty screening persons attempting to gain access into Mar-a-Lago at the designated primary checkpoint located in a parking lot across the street from Mar-a-Lago, when she was approached by an Asian female, later identified as **ZHANG**, attempting to gain access into the Mar-a-Lago club. **ZHANG** informed Special Agent Kerr that she was there to go to the pool and presented Special Agent Kerr with two Republic of China passports as identification, both in the name of **ZHANG** and displaying her photograph. Once Special Agent Kerr confirmed the identification,

2

**ZHANG**'s information and passports were then provided to Mar-a-Lago security for verification that Zhang was listed on the Mar-a-Lago access list. Initially, Mar-a-Lago security was unable to locate and verify ZHANG was on the Mar-a-Lago access list. With **ZHANG** stating she was going to the pool, Mar-a-Lago security then called the manager of the Beach Club to attempt to verify. The Mar-a-Lago Manager on duty at that time informed Mar-a-Lago security that **ZHANG** is the last name of a member at the Mar-a-Lago club. **ZHANG** was asked if the true member, who shall be referred to as "HZ" herein, was her father, but she did not give a definitive answer. **ZHANG** additionally did not give a definitive answer when asked if she was there to meet with anyone. Due to a potential language barrier issue, Mar-a-Lago believed her to be the relative of member Zhang and allowed her access onto the property. At this time, ZHANG was obliged to pass two more prominently displayed United States Secret Service restricted access warning signs containing the same restricted access warning referenced above.

5. **ZHANG** was then picked up by Mar-a-Lago valet driver via golf cart shuttle. At this time the valet driver asked ZHANG where she was intending to go on Mar-a-Lago property, but **ZHANG** responded that she didn't know where she wanted to go. The valet driver then proceeded to drive her to the main reception area. During this ride, **ZHANG** passed three additional United States Secret Service Agents wearing marked U.S. Secret Service police clothing in addition to one more United States Secret Service Restricted Access sign.

6. Upon arrival at the USSS posted main magnetometer checkpoint, **ZHANG** exited the golf cart and stopped in front of yet another United States Secret Service restricted access sign. Special Agent Paul Patenaude observed ZHANG reading the restricted access signage for approximately 20 seconds before proceeding through the magnetometers. After complying with

3

the screening procedures at this checkpoint, ZHANG proceeded to the main reception area of the Mar-a-Lago Club. Prior to her arrival at the reception, ZHANG passed a total of two (2) additional United States Secret Service restricted access warning signs in this location.

7. Upon entering the reception area, a specific identified receptionist (hereinafter "the Receptionist") greeted ZHANG and asked why she was at Mar-a-Lago. After being asked several times, ZHANG finally responded that she was there for a United Nations Chinese American Association event later in the evening. The Receptionist knew this event did not exist on property as she has a complete list of events. The Receptionist then proceed to check all the access lists for Mar-a-Lago to confirm that ZHANG was approved to be on property. The Receptionist confirmed that ZHANG was not on any Mar-a-Lago access list. At this time, the Receptionist made your affiant aware of the situation and stated that ZHANG was not authorized to be on property.

8. Your affiant then made contact with ZHANG, and ZHANG again stated that she was there to attend a "United Nations Friendship Event" between China and the United States. ZHANG advised your affiant that she came to Mar-a-Lago early for the event so she could familiarize herself with the property and take pictures. ZHANG stated she had documentation purportedly showing her invitation to the event, but agents were unable to read it as it was in Chinese. Your affiant notes again that no such event was scheduled to take place at Mar-a-Lago during this time period, and thus ZHANG could not have any legitimate documentation authorizing her entry to Mar-a-Lago for such a purpose. Your affiant further notes that these statements were directly contradictory to the ZHANG's earlier statement to Special Agent Kerr

4

that ZHANG was supposedly at Mar-a-Lago to go the pool. **ZHANG** was then transported off of Mar-a-Lago property for further interviewing.

9. Your affiant continued to interview **ZHANG**, who freely and without difficulty conversed with your affiant in the English language, and informed her that she was not allowed on Mar-a-Lago property and that she unlawfully gained access onto the protected grounds. During this interview, **ZHANG** then became verbally aggressive with agents and she was detained and transported back to the United States Secret Service - West Palm Beach Resident Office.

10. **ZHANG** was then advised of her *Miranda* Warnings in English which she indicated she understood, and signed the warning waiving her *Miranda* Rights. During the second interview of **ZHANG**, she claimed her Chinese friend "Charles" told her to travel from Shanghai, China to Palm Beach, Florida, to attend this event and attempt to speak with a member of the President's family about Chinese and American foreign economic relations. Agents were unable to obtain any information more specifically identifying ZHANG's purported contact, "Charles," as **ZHANG** claimed she has only spoken to him via "WeChat," which your affiant knows from investigative research to be the dominant instant messaging platform in China. Additionally, **ZHANG** stated that she did not tell agents at the main checkpoint that she was going to the pool. And when the security guard told her the name of "Zhang" she just thought it was the person running the event and she was going to meet them. However, your affiant notes that ZHANG exhibited a detailed knowledge of, and ability to converse in and understand even subtle nuances of, the English language. For example, as agents were attempting to obtain written consent for examination of electronic devices found in her possession, **ZHANG** read the

5

entire form in English out loud to agents. Additionally, **ZHANG** would question agents about the context of certain words throughout the form. In doing so, **ZHANG** showed her understanding and comprehension of the English language through reading and speaking.

11. Interviews were conducted of Special Agent Krystle Kerr, Uniformed Division Officer Bryton Peternel and a specific identified Mar-a-Lago security officer. Each of these interviews affirmed that **ZHANG** told Special Agent Kerr she was going to the pool at Mar-a-Lago. Additionally, Officer Peternel stated that she did not give any responses when asked if "Zhang" was her father or the person she was going to see.

12. In the course of ZHANG's investigative detention a total of four (4) cellular telephones, one (1) lap top computer, one (1) external hard drive type device, and one (1) thumb drive were found in her possession. Agents requested ZHANG's consent to search the devices, to which ZHANG consented. A preliminary forensic examination of the thumb drive determined it contained malicious malware.

13. Your affiant further notes and submits that the defendant's false statement to Special Agent Kerr was material in that by so stating, **ZHANG** falsely placed herself in the category of Mar-a-Lago club members, who are permitted past the initial security screening checkpoint and permitted to inside the protective perimeter restricted area to meet with Mar-a-Lago club management. Had **ZHANG** not falsely portrayed herself as a club member seeking to visit the pool, and instead advised she was there to attend the non-existent "United Nations Friendship Event" between China and the United States, her access would have declined by U.S. Secret Service at the preliminary inspection point. Your affiant further notes that no swimming apparel was found in **ZHANG's** possession or on her person.

6

14. Based upon the foregoing, your affiant respectfully submits that there is probable cause to charge defendant **Yujing ZHANG** with: (a) having knowingly make or use any false, fictitious, or fraudulent statement or representation, to a federal officer in a matter within the jurisdiction of the United States Secret Service, U.S. Department of Homeland Security, an agency of the executive branch of the United States, in violation of Title 18, United States Code, Section 1001; and, (b) with having knowingly entered and remained in a restricted building and grounds, that is, the grounds of Mar-a-Lago, as defined under Title 18, United States Code, Section 1752(c)(1)(B), in violation of Title 18, United States Code, Sections 1752(a)(1) and 1752(b)(2).

FURTHER YOUR AFFIANT SAYETH NAUGHT

*[signature]*
SAMUEL IVANOVICH
SPECIAL AGENT
U.S. SECRET SERVICE

SWORN TO AND SUBSCRIBED BEFORE
ME THIS 31st DAY OF MARCH, 2019,
IN PALM BEACH COUNTY, SOUTHERN DISTRICT
OF FLORIDA. By Telephone.

*[signature]*
**HON. WILLIAM MATTHEWMAN**
**UNITED STATES MAGISTRATE JUDGE**

7

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name: __Yujing ZHANG__

Case No.: **19-8100-WM**

**Count # 1**
Making False Statements to a Federal Officer
Title 18, United States Code, Section 1001

**Max. Penalty**: 0-5 years' imprisonment; $250,000 fine; 0-3 year supervised release: and, a $100.00 special assessment.

**Count # 2**
Entering or Remaining in a Restricted Building or Grounds
Title 18, United States Code, Sections 1752(a)(1) and 1752(b)(2)

**Max. Penalty**: 0-1 years' imprisonment or 0-5 years' probation[1]; $100,000 fine[2]; 0-1 year supervised release[3]: and, a $25.00 special assessment.[4]

---

[1] See 18 USC § 3561(c)(2)
[2] See 18 USC § 3571(b)(5)
[3] See 18 USC § 3583(b)(3)
[4] See 18 USC § 3013(a)(1)(A)(iii)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-8100-WM

UNITED STATES OF AMERICA,

                          Plaintiff,

vs.

YUJING ZHANG,

                          Defendant.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Miami Office of the United States Attorney's Office prior to July 20, 2008?

    Yes      X **No**

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office (West Palm Beach Office) only prior to December 18, 2011?

    Yes      X **No**

3. Did this matter originate from a matter pending in the Fort Pierce Office of the United States Attorney's Office prior to August 8, 2014?

    Yes      X **No**

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

BY: _____
JOHN C. McMILLAN
ASSISTANT UNITED STATES ATTORNEY
Admin. No. A5500228
500 S. Australian Ave., Suite 400
West Palm Beach, FL 33401
Office:   (561) 820-8711
John.mcmillan@usdoj.gov